UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MIGUEL SURIANO

VERSUS

FRENCH RIVIERA HEALTH SPA, INC.

CIVIL ACTION

NO: 18-9141

SECTION: "S" (2)

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion to Dismiss Pursuant to Rule 12(b)(6)** (Rec. Doc. 4) filed by defendant, French Riviera Health Spa, Inc., is **GRANTED**.

Plaintiff has filed suit on behalf of himself and others similarly situated claiming that defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by sending certain unsolicited text messages to him. Defendant has filed the instant motion pursuant to Federal Rule 12(b)(6) seeking to dimiss the complaint for failure to state a claim. Plaintiff opposes the motion. For the reasons which follow, the motion is granted.

## FACTUAL BACKGROUND

On October 25, 2017, plaintiff signed a six-month contract to join defendant's gym. The next day, in a separate agreement, he purchased a six-month

membership in the defendant's personal training program. He renewed the membership contract twice (on April 12, 2018, and September 5, 2018), and the training program contract once (on August 16, 2018). While plaintiff did not expressly consent in writing to receive text messages from defendant, he provided his cell phone number in multiple places in the applications. He subsequently received text messages at the number he provided from the defendant, which he claims violated the TCPA.

Plaintiff's TCPA claim is premised on the following five text messages, which he received between October 26, 2017 and February 22, 2018. The first text message, received the day after he joined the gym, reads: "Dear member, Welcome to Riviera Fitness! Where your fitness is our strength. We're excited to have you as a member. Have a great workout!" The second, sent on November 8, 2017, stated: "Dear member, We offer a variety of classes and small group training. Click here (http://tinyurl.com/yag8aoha), for class schedules." The third message, received on December 24, 2017 reads: "Dear member, Become your best self with our Personal Trainers. Ask us for info on our PT program. (http://tinyurl.com/yc8zaep8)." The fourth message, on January 23, 2018, reads: "Follow us on social media! Facebook (http://tinyurl.com/ Y8m7okwe) Instagram

2

(http://tinyurl.com/y77ocpjh)." The fifth and final complained of message, received on February 22, 2018, stated: "Dear member, Did you know that we have a blog? Each month we post workout tips, testimonials and much more!"

## APPLICABLE LAW

### 1. *Federal Rule 12(b)(6) standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, enough facts to state a claim for relief that is plausible on its face must be pleaded. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. v. Twombly, 127 S. Ct. 1955, 1964-65 & 1973 n. 14 (2007)). A claim is plausible on its face when the plaintiff pleads facts from which the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1965. The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." In re S. Scrap Material Co., LLC, 541 F.3d

584, 587 (5th Cir. 2008). However, the court need not accept legal conclusions couched as factual allegations as true. Iqbal, 129 S.Ct. at 1949-50.

In considering a motion to dismiss for failure to state a claim, a district court may consider only the contents of the pleading and the attachments thereto. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)). However, the district court "may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp., 748 F.3d 631, 635 (5th Cir. 2014).

## 2. *The Telephone Consumer Protection Act ("TCPA")*

Under the TCPA, it is unlawful to make a call using an automatic telephone dialing system "to any telephone number assigned to a ... cellular telephone service," without the recipient's express consent. 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private right of action for injunctive relief and damages. Id. § 227(b)(3). A text message to a cell phone is a "call" for purposes of the TCPA. Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 667 (2016).

The TCPA does not define "express consent." However, the Federal

Communications Commission ("FCC") has provided guidance on the interpretation of the act. Under the FCC's 1992 order, "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." In re Rules & Regulations Implementing the TCPA, 7 F.C.C. Rcd. 8752, 8769 at ¶ 31 (1992); see also, Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037 (9th Cir. 2017). Nevertheless, as the Van Patten court noted, it would be inaccurate to say that the FCC has established a rule that a consumer giving a phone number to a company has provided consent to be contacted for any reason. "Instead, FCC orders and rulings show that the transactional context matters in determining the scope of a consumer's consent to contact." Id. at 1046. In other words, there must be some relationship between the reason the number was provided and the content of subsequent TCPA-governed communications.

In 2012, the FCC issued new regulations, distinguishing between telemarketing and advertising messages as opposed to other types of messages. 47 C.F.R. § 64.1200(a)(2). Under the 2012 regulations, the TCPA is violated when a message recipient has not granted prior *written* consent to receive messages which constitute telemarketing or advertising messages. Id.

The 2012 regulation defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services," and "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." Id. § 64.1200(f)(1), (12). However, "[n]ot all text messages containing promotional information constitute advertising or telemarketing." Reese v. Marketron Broad. Sols., Inc., 2018 WL 2117241, at *4 (E.D. La. May 8, 2018). "[A] number of district courts have held that informational messages do not rise to the level of advertising or telemarketing merely because the messages contain some commercial information. Id. at *5 (citing cases).

In interpreting the TCPA, it should be borne in mind that "[t]he TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls." Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 271 (3d Cir. 2013), citing S. Rep. 102-178, at 5 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1972.

## ANALYSIS

In this case, it is undisputed that the plaintiff provided his cell phone number to defendant (thus providing express consent), but that he did not provide

6

express *written* consent. Accordingly, the issue before the court is whether the text messages in question are telemarketing or advertising, requiring express written consent, or informational messages, which do not.

At the outset, messages one, two, and five are plainly informational in nature. The first (sent the day after plaintiff joined) welcomes him to the gym; the second provides a link to classes and group training schedules, and the fifth informs him of a blog containing workout tips and testimonials. Accordingly, plaintiff's provision of his cell phone number constitutes express consent to receive these informational messages which relate to his provision of his number to defendant: he provided the number in joining the gym, and the messages provide information on gym amenities or activities.

The third message, "Dear member, Become your best self with our Personal Trainers. Ask us for info on our PT program. (http://tinyurl.com /yc8zaep8)," could in some contexts constitute advertising; however, at the time plaintiff received this message, he had already joined the gym and signed up for six months of personal training services. The message merely encouraged plaintiff to take advantage of the personal training services for which he already paid, and thus, it too, may fairly be classified as informational. Express written consent was

7

therefore not necessary.

The final message complained of by plaintiff reads: "Follow us on social media! Facebook (http://tinyurl.com/ Y8m7okwe) Instagram (http://tinyurl.com/y77ocpjh)." Again, defendant argues that this is merely informational, inviting plaintiff to join the on-line/social media community of the gym of which he is already a member. While defendant's Facebook and Instagram sites in all likelihood do have a promotional aspect, the message in question falls outside of the regulatory definition of advertising and telemarketing. An invitation to visit a social media site is not material which specifically advertises "the commercial availability or quality of any property, goods, or services," nor does it constitute "the initiation of a . . . message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. . . ." Accordingly, this final message also did not require express written consent.

Based on the foregoing, none of the messages identified by plaintiff was

sent in violation of TCPA. Accordingly, defendant's motion to dismiss is granted.

New Orleans, Louisiana, this 20th day of December, 2018.

_____
MARY ANN VIAL LEMMON
**UNITED STATES DISTRICT JUDGE**